UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: ) <br> ) <br> EDWARD G. NEWMAN, ) <br> ) <br> Debtor. ) <br> _____ ) | CASE NO. 10-31466-WSS <br> CHAPTER 11 |

## DISCLOSURE STATEMENT

### I. INTRODUCTION

Edward G. Newman ("Newman" or "Debtor") provides this Disclosure Statement (the "Disclosure Statement") to all known creditors of the Debtor in order to disclose the information deemed to be material, important, and necessary for the creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance or rejection of the Plan of Reorganization (hereinafter "the Plan").

The Bankruptcy Court has set a hearing on this Disclosure Statement for _____, 2011 at _____ a.m. CDT at the U. S. Courthouse, Pensacola, Florida. Creditors may vote on the Plan if their claim is impaired by filling out and mailing the accompanying ballot form to the Bankruptcy Court. Some classes of creditors are impaired and a separate ballot for the use of said classes of creditors in indicating their acceptance or rejection of the Plan is enclosed with this Disclosure Statement. As a creditor, your vote is important. In order for the Plan to be deemed accepted, of the ballots cast, creditors that hold at least two-thirds in dollar amount and more than one-half in number of the allowed claims of impaired classes must vote to accept the Plan. However, you are advised that the Debtor may be afforded the right under the Bankruptcy Code to have the Plan confirmed over the objections of dissenting creditors consistent with the limitations set forth in the Bankruptcy Code.

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTORS WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE UNITED STATES TRUSTEE FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Florida (the "Bankruptcy Court") on July 16, 2010.

You are urged to carefully read the contents of this Disclosure Statement before making your decision to accept or reject the Plan. Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they presently exist. The terms used herein have the same meaning as in the Plan unless the context hereof requires otherwise.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. NO REPRESENTATIONS, OTHER THAN THOSE SET FORTH HEREIN, CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR. IF THE PLAN IS CONFIRMED, YOU WILL BE BOUND BY ITS TERMS. THEREFORE YOU SHOULD MAKE SUCH INQUIRIES YOU DEEM NECESSARY AND APPROPRIATE AND THEN CAST YOUR VOTE ON THE PLAN.

Under the Plan, the claims of Creditors, depending upon classification of their respective claims (see Plan of Reorganization) will either (a) be paid in full, (b) be paid in part or not at all based on the Court's ruling on any Objection to Claim filed, or, (c) survive the Debtor's Reorganization unimpaired.

## II. HISTORY OF THE DEBTOR AND REASONS FOR FILING PETITION

Debtor was Chairman and CEO of a NASDAQ-listed public Corporation, Xybernaut, based in Fairfax, Virginia, until 2005. At that time, the SEC announced that it had concluded an initial investigation into the corporation's financings beginning in 2001 from a number of investment banks, and stated its intentions to further investigate the company's Private Investor Private Equity (PIPE) transactions. It believed that a number of the company's board members, outside counsel and officers had conspired to provide the bankers with too-favorable terms to acquire their investment

funds and that, in addition, certain officers had received payments from the investment banks to allow the investors to receive those favorable terms.

The debtor was one of those officers accused of failing to disclose or have the company disclose in its public filings an alleged payment of $100,000 associated with one or more of those financings. In 2006 or thereabouts, the government indicted several of those accused. The debtor was one of those officers. The debtor denied and denies any wrong doing as well as the receipt of any funds from the investment banks. Nonetheless, for the benefit of the 70,000 – 80,000 shareholders and the company staff worldwide, the debtor chose to voluntary resign from the company until the legal proceedings are completed. To date, no actions by the government against the debtor have been initiated other than the indictment, and primarily due to the departure of the debtor from Xybernaut. Primarily due to the loss of the debtor's personal relationships with the leaders of many of the world's largest corporations in the technology world, the company subsequently filed for bankruptcy, taking its share price to zero. The debtor never sold any shares, basing his financial future on the expected profits of the company, the rise in share price and the expected continued income from salary and bonuses approximating $300-400,000 annually.

When that compensation went to zero, accompanied by unexpected medical problems and costs, and soaring legal costs associated with the SEC action, the debtor found himself in the throes of financial difficulty. He attempted to look for other executive employment, but the indictment hung over him like a cloud, preventing him from securing such employment.

It is expected that the cloud will remain and he will not be able to secure executive positions with established public companies again until he has his day in court and/or the government drops its case against him.

Nonetheless, the debtor has received the support of private investors who still have confidence in his integrity and capacity, and he is now in charge of an LLC known as StratCom International. It targets the expanding wireless industry with novel products and services, and has the backing of the world's leading wireless products and services companies as well as a few key clients from his prior life at Xybernaut and Xerox Corporation before that.

The debtor has just begun receiving compensation from StratCom. His initial salary is $90,000 annually plus a quarterly bonus based on his performance. In addition to that $7,500 a month, he

3

will begin receiving a car allowance of $500/month. Further, he receives net social security benefits of $1,625 per month. In total, his net monthly income from all fixed sources is $8,053 excluding any quarterly bonus. Bonuses are targeted at $10,000 per quarter, and the first is scheduled to be received October 31, 2011.

StratCom is in the throes of negotiations with the State of Virginia and the Tobacco Commission to fund a Center of Excellence for Wireless Technologies. The Center has already received approval from Nottoway County, Virginia (the site for the Center) and the Commission/State. Formalization of the grant funding of $5 million annually is occurring August 30, 2011. The final approvals and initial funding for the Center are expected to be effective in October, 2011. Based on that approval, the debtor's base salary will be increased to $200,000 annually effective January 1, 2012. The attached repayment schedule is based upon the debtor's current compensation for 2011, and the projected new compensation starting in 2012.

### III. OBJECTIONS TO CLAIMS AND PREFERENCE ANALYSIS

Pursuant to the Plan, the Debtor may object to any scheduled Claim or Proof of Claim filed against the Debtor. Such an objection shall preclude the consideration of any claims as "allowed" for the purposes of timely distribution in accordance with the Plan. It is the Debtor's position that at this time there are no preferences or voidable transfers which the Debtor can pursue. Pursuant to the Bankruptcy code, Debtor may file claims for those creditors who did not file claims.

**A Claims Bar Date was established of November 26, 2010.** The Debtor has not filed objections to claims as of the date of this Disclosure Statement.

The Debtor will file any necessary objections to claims of creditors based upon duplicative claims being filed, amended claims being filed or based upon the Debtor's belief that the amount due and owing to the claimant has been miscalculated, is less than claimed or not due and owing at all. Pursuant to the local rules of the Northern District of Florida, Debtor may file objections to claims no less than forty-five days prior to hearing on confirmation of Debtors Plan.

### IV. SOURCE OF FINANCIAL INFORMATION

The source of financial information for this Disclosure Statement and Plan is the Debtor.

## V. DEBTOR'S OPERATION AND STRUCTURE

### Synopsis of Operation In Chapter 11

Subsequent to the petition date, the debtor assumed the position of Managing Partner of the Limited Liability Corporation (LLC) StratCom International chartered in Las Vegas, Nevada. The LLC attracted other limited partners who have provided funding for the operations of the company to date. Additional limited partners have expressed an interest in providing additional capital to see the company through to attaining its business objectives. Negotiations are currently ongoing.

## VI. STRUCTURE OF REORGANIZED DEBTOR

1. ### The Reorganized Debtor

As the Debtor is an individual, upon the Effective Date, the Reorganized Debtor shall continue with his management of StratCom International, LLC with the same responsibilities he has currently. Upon initiation of the Center of Excellence for Wireless Technologies, he will also assume the position of Director for the Center.

2. ### Retention of Assets

Upon the Effective Date, the Reorganized Debtor shall retain his interest in his real and personal property, and shall be free to operate and to perform any and all acts without further order from the Court and title to his assets shall remain vested in Debtor, absent Debtors desire to sell real and personal property during these proceedings.

## VII. CLAIMANTS AND SUMMARY OF THE PLAN

Claimants entitled to vote under the Plan must affirmatively act in order for the Plan to be confirmed by the Court. According to the Debtor's Plan, a member of Classes are "impaired" within the meaning of Section 1124 of the Bankruptcy Code. These Classes, accordingly, must vote to accept the Plan in order for the Plan to be confirmed without a cram down. A Claimant who fails to vote to either accept or reject the Plan will not be included in the calculation regarding the acceptance or rejection of the Plan.

Although Debtor's Plan of Reorganization contemplates a One Hundred Percent (100%) payout to his creditors, a ballot for acceptance or rejection of Debtor's Plan by the holders of Claims and/or Interests which may be impaired will be included herewith in the event it becomes necessary for creditors of a class to vote on Debtor's Plan. Instructions for completing and returning the ballots

are be provided in the ballot for the creditor(s) in such class and should be carefully reviewed. The Plan will be confirmed by the Bankruptcy Court and made binding upon all holders of claims and interests, and if it becomes necessary for creditors of a class to vote on Debtor's Plan, it will be confirmed by the Bankruptcy Court and made binding upon all holders of claims and interests if, with respect to Classes or Claimants determined to be impaired, the Plan is accepted by holders of two-thirds in dollar amount, and more than one-half in number of Claims in each such class voting upon the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable treatment to any class rejecting it. Your attention is directed to Section 1129 of the Bankruptcy Code for details regarding the circumstances of such provisions.

## Summary of the Plan

CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO READ AND REVIEW THE FULL TEXT OF THE PLAN PRIOR TO VOTING ON WHETHER TO OBJECT TO CONFIRMATION OF THE PLAN AND, SHOULD IT BECOME NECESSARY FOR A VOTE ON THE PLAN BY A PARTICULAR CLASS, WHETHER TO ACCEPT OR REJECT THE PLAN.

The claims of creditors are divided into four classes or sub-classes. Administrative Claims, including all fees to be paid to the Bankruptcy Court or the U.S. Trustee's Office and professional fees and expenses will be paid in full, in cash, on the effective date, or as agreed between parties. The claims of the Class 1 creditor, Suntrust Bank, will be paid in full via short-sale of the property between agreement between the parties in place. The claims of the Class 2 creditor, PHH Mortgage, will be settled via renegotiation of the mortgage on the Virginia property in accordance with the Housing and Economic Recover Program (PL 110-289), such discussions to start upon approval of this plan. If such a mutual restructuring is not mutually negotiated, then the Debtor will enter into an agreement with the lender to sell the property and use the proceeds to pay the lender in full. The Class 3 creditor, New Opportunities Ventures, will be given uncontested possession of the property known as Lot 55, Pines of Blue Mountain, and relieve debtor of any further obligation for that note.

## LIST OF CREDITORS IN EACH CLASS

| | |
|---|---|
| **Class 1:** | **Claim of SunTrust Bank** |
| **Class 2:** | **Claim of PHH Mortgage** |
| **Class 3:** | **New Opportunities Ventures** |
| **Class 4:** | **Administrative Convenience Class** |
| **Class 5:** | **General Unsecured Creditors** |
| **Class 6:** | **Equity Security Holder** |

Article III-B: The claims of creditors are divided into seven (6) classes. Funds available to satisfy claims of creditors will be from the sale or transfer of real estate owned by Debtor or by Debtor and his Wife as tenants by the entireties.

**Class 1** consists of the **Secured Claim of SunTrust Bank** and is claimed to be in the amount of $2,040,000.00. **Class 2** consists of the **Secured Claim of PHH Mortgage Corporation** and is in the amount of $900,000.00. **Class 3** consists of the **Secured Claims of New Opportunities Ventures** and is in the amount of $200,000.00. **Class 4** is an **Administrative Convenience Class** which consists of twenty five (25) Creditors with claims up to $2,500.00 and totaling $14,052.06 who, subject to a claims objection, will be paid in full on a monthly basis within ninety (90) days from the date of confirmation of debtors Plan of Reorganization together with interest at the rate of 3.5%. **Class 5 General Unsecured Claims** consisting of twenty three (23) creditors and total $840,000.00 according to Debtors' records and will be paid over a period of eight years together with interest at the rate of 3.5%, amortized over a period of twenty (20) years and with a balloon payment at the end of the eighth year. **Class 6** consists of the **Equity Security Holder** who will retain his interest in Debtor.

## VIII. IMPLEMENTATION OF THE PLAN

The distributions called for under the Plan to be paid administrative claimants shall be paid by Debtor or by Debtor through his counsel, with all other payments being made by Debtor.

## IX. LIQUIDATION ANALYSIS

The Debtor believes that his Plan provides the greatest possible return upon the claims of all creditors and is in the best interests of all creditors.

As with any plan, an alternative to the successful confirmation of the Debtor's Plan would be the dismissal of the Chapter 11 proceedings or a conversion of the Chapter 11 case to a Chapter 7 case and subsequent liquidation of the Debtor and his assets by a duly appointed Chapter 7 trustee.

In the event of a liquidation of the Debtor and his assets under Chapter 7, the following is likely to occur:

(a) An additional tier of administrative expenses, entitled to a greater priority than general unsecured claims, under 11 U.S.C. § 507(a)(1) of the Code would be incurred. Such administrative expenses would include, but would not necessarily be limited to, trustee's commissions and fees to the trustee's accountants, attorneys, and other professionals likely to be retained by the trustee for the purpose of liquidating the assets of the Debtor, together with the costs of preserving the assets of the estate pending liquidation;

(b) Debtors non-exempt assets would be disbursed by the Chapter 7 Trustee. Accordingly, if forced to liquidate, after payment of all Bankruptcy Court approved administrative expenses, which would arise as a result of a conversion to Chapter 7 and payment of Debtor's Chapter 11 administrative expenses, the Debtors remaining funds would be disbursed to the IRS. Therefore, should the Plan not be implemented, most of the priority unsecured debt and the unsecured debt, after all administrative expenses, and secured debts were satisfied, would receive no money on liquidation.

## X. FEASIBILITY AND BEST INTEREST TESTS

For purposes of determining whether the Plan meets the feasibility test, Debtor believes that he has the ability to meet his obligations under the Plan and that same is feasible. Debtor has reached agreement already with Class 1 Creditor, and has met his obligations to Class 2 Creditor as approved by the Court to date. Class 3 Creditor has agreed to accept the property as payment in full. Debtor's current and anticipated income will enable him to meet the claims of all unsecured Creditors under the Plan.

## XI. CONFIRMATION BY CRAM DOWN

The Debtor reserves the right, in the event that an impaired class reject the Plan, to seek confirmation of the Plan pursuant to 11 U.S.C. § 1129(b) of the Bankruptcy Code if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class.

8

## XII. ADDITIONAL DISCLOSURES

A. There are no payments or promises made of the kind referenced in §1129(a)(5)(A) and (B) of the Bankruptcy Code (which relate to the identity of and promises made to insiders of Debtor) which have not previously been disclosed to the Court, creditors and other parties in interest.

B. As Debtor is an individual, the Plan does not affect ownership of Debtor's assets remaining with Debtor after confirmation.

## XIII. MISCELLANEOUS PROVISIONS

A. Notwithstanding any other provisions of the Plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for distribution on account of such claim shall not be paid in accordance with the provisions of the Plan until and unless such claim has become an Allowed Claim by a final order. If allowed, the claim shall be paid on the same terms provided for that Class under Debtor's Plan as if there had been no dispute.

B. At any time before the Confirmation Date, the Debtor may amend or modify the Plan or portions thereof so long as the Plan, as amended or modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code. After the Debtor files a modification with the Bankruptcy Court, the Plan, as modified, shall become the Plan.

C. At any time after the Confirmation Date, and before substantial consummation of the Plan, the Reorganized Debtor may modify the plan so long as the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code. The Plan, if modified under this paragraph, shall become the Plan.

D. After the Confirmation Date, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

## XIV. CONCLUSION

Under the Debtor's Plan, all Claimants of the Debtor with allowed claims will participate in some manner in the distribution to be made thereunder, and all creditors shall be paid the total of their Claim over a six (6) year time frame. The Debtor believes that the distributions contemplated in his Plan are fair and afford all Claimants and Interest Holders equitable treatment.

ACCORDINGLY, THE DEBTOR RECOMMENDS THAT ALL CLAIMANTS VOTE TO ACCEPT THE PLAN.

**I hereby verify that all of the information contained in this Disclosure Statement is true and correct to the best of my knowledge and belief.**

/s/ C. Edwin Rude, Jr.
**C. EDWIN RUDE, JR.**
Florida Bar No. 0157985
211 E. Call Street
Tallahassee, Florida 32301
Telephone (850) 222-2311
Facsimile (850) 222-2120
Attorney for Debtor