## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE:                                        )
                                              )
EDWARD G. NEWMAN,                             )          CASE NO.  10-31466-WSS
                                              )          CHAPTER 11
　　　　　Debtor.                              )
                                              )
_____      )

## MOTION FOR ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY OTHER THAN IN THE ORDINARY COURSE OF BUSINESS AND FREE AND CLEAR OF LIENS AND OTHER INTERESTS PURSUANT TO 11 U.S.C. SECTION 363(b) AND (f)

COMES NOW, the Debtor and Debtor-in-Possession, ("Debtor"), by and through its undersigned attorney and pursuant to N.D. Fla LBR 6004-1 B(1), 11 U.S.C. Sections 363(b) and (f) and Rules 6004 and 9014, Federal Rules of Bankruptcy Procedure, and respectfully moves the Court to enter its order allowing the Debtor to sell real and personal property other than in the ordinary course of business and free and clear of liens and other interests and, in support hereof, would state:

1.      Debtor filed its Voluntary Petition for relief pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. 101 *et. seq.* on July  16, 2010.

2.      These proceedings are core proceedings pursuant to 28 U.S.C. 157(b), and this Court has jurisdiction over same pursuant to 28 U.S.C. 1334(b).

3.      Debtor has filed its Report and Notice of Intention to Sell Real and Personal Property Free and Clear of Liens and other Interests contemporaneously with this Motion and Debtors Chapter 11 Plan will be amended to provide for the sale of Debtors real and personal property.  Debtor has agreed to sale of real and personal property (the "Agreement") to Gulf Trace, LLC, c/o Edward A. Harris, III (the "Purchaser").  The Agreement provides, in pertinent part, for the sale of real and personal property from Debtor to the Purchaser to be free and clear of liens, claims, encumbrances, and other interests and to be approved and confirmed by Order of this Court.  The consideration the Purchaser will pay for the assets represents a fair value to Debtor in the amount of $900,000.00.

By separate motion Debtor may seek the assumption and assignment to the purchaser of any certain executory contracts and unexpired leases which may exist.

4.      The sale of Debtors Real and Personal Property is a part of the Debtor's reorganization process. The transfer of the real and personal property to the Purchaser shall not be subject to taxation under any federal, state or local law imposing a stamp, transfer or similar tax in accordance with 1146(c) and 105(a) of the Bankruptcy Code.

5.      Debtor and Purchaser have negotiated the terms of and have entered into the Agreement in good faith and Debtor is of the opinion and belief that the Purchaser is a good faith purchaser within the meaning of 11 U.S.C. Section 363(m) and that the terms of the Agreement are in the best interests of Debtor and Debtor's estate. The original of said Agreement is attached hereto at Exhibit "A".

6.      The liens, claims, encumbrances, and other interests will de deemed to have attached to the proceeds of sale, which proceeds will be disbursed to the secured creditor at the closing of said sale.

7.      On information and belief, and based on claims filed in these proceedings prior to the Claims Bar Date, the proposed sale is in the best interest of Debtor and the creditors of Debtor's estate.

WHEREFORE, Debtor respectfully moves the Court to enter its Order finding purchaser to be a good faith purchaser within the meaning of 11 U.S.C. Section 363(m) and allowing Debtor to sell Debtor's real and personal property as set forth in Debtor's Report and Notice and as is contemplated by Debtor's Plan of Reorganization filed herein, other than in the ordinary course of business and free and clear of all liens, claims and encumbrances, and other interests, and for such other and further relief as this Court may deem proper.

Respectfully submitted this 2nd day of September, 2011.

/s/ C. Edwin Rude, Jr.
**C. EDWIN RUDE, JR.**
Florida Bar No. 0157985
211 East Call Street
Tallahassee, Florida 32301-7607
Telephone: (850) 222-2311
Facsimile: (850) 222-2120
Attorney for Debtor-In-Possession and Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic means and/or facsimile and/or U.S. Mail to **Charles Edwards, Esq.**, Assistant U.S. Trustee, Office of the U.S. Trustee, 110 E. Park Avenue, Suite 128, Tallahassee, FL 32301 and **Jason Egan, Esq.**, Office of the U.S. Trustee, 110 E. Park Avenue, Suite 128, Tallahassee, FL 32301 and **Antonio Alonso, Esq.**, Law Offices of Marshall C. Watson, P.A., 1800 N.W. 49th Street, Suite 120, Fort Lauderdale, FL 33309 and all other parties in interest as listed on the Court's mailing matrix this 2nd day of September, 2011.

/s/ C. Edwin Rude, Jr.

**C. EDWIN RUDE, JR.**

04-01-2011 13:39   ABC 7034251131                                                                    PAGE2

## "AS IS" Residential Contract for Sale and Purchase          ⋀⋀⋀ FloridaRealtors

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

1 • PARTIES: _____ EDWARD G & FRANCES C NEWMAN _____ ("Seller"),
2 • and _____ GULF TRACE, LLC, c/o EDWARD A HARRIS, III _____ ("Buyer"),
3   agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal
4   Property (collectively "Property") pursuant to the terms and conditions of this Residential Contract For Sale
5   And Purchase and any riders and addenda ("Contract"):
6   1.  PROPERTY DESCRIPTION:
7 •    (a) Street address, city, zip: __148 GULF SHORE DRIVE__  __SANTA ROSA BEACH, FL__  __32459__
8 •    (b) Property is located in: __WALTON__ County, Florida. Real Property Tax ID No: __09-3S-19-35040-00F-0060__
9 •    (c) Legal description of the Real Property: __LOT 6 BLK F GULF TRACE 1st ADD OR 498-114 OR 616-568 OR 1956-111 OR 1954-137__
10 •
11   together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
12   attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded below.
13   (d) Personal Property: The following items owned by Seller and existing on the Property as of the date
14   of the initial offer are included in the purchase ("Personal Property"): (i) range(s)/oven(s), dishwasher(s),
15   disposal, ceiling fan(s), intercom, light fixtures, rods, draperies and other window treatments, garage door
16   openers, and security gate and other access devices; and (ii) those additional items checked below. If
17 •  additional details are necessary, specify below. If left blank, the item below is not included:

    [x] Refrigerator(s)        [x] Smoke detector(s)      [ ] Pool maintenance        [ ] Storage shed
    [x] Microwave oven         [ ] Security system        [ ] Pool equipment          [ ] TV antenna/satellite dish
    [x] Washer                 [ ] Window/wall a/c         [ ] Pool heater             [ ] Water softener/purifier
    [x] Dryer                  [ ] Generator              [ ] Spa or hot tub with heater  [x] Storm shutters and
    [ ] Stand-alone ice maker                             [ ] Above ground pool           panels        _Ean 4/1/11_

18   The only other items of Personal Property included in this purchase, and any additional details regarding
19 • Personal Property, if necessary, are: _ITEMS-16 ANY ENCUMBRANCES AS APPROVED BY_  _EGN__ 4/1/11_
20 • _EXCEPT PERSONAL PROPERTY SECURED BY OWNERS_  _JLW_
21   Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
22 • (e) The following items are excluded from the purchase: _____
23 •
24 • 2.  PURCHASE PRICE (U.S. currency): ..................................... $____900,000.00
25 •    (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) $____10,000.00
26      The initial deposit made payable and delivered to "Escrow Agent" named below
27 •   (CHECK ONE): [ ] accompanies offer or [ ] is to be made upon acceptance (Effective Date)
28         or [x] is to be made within _____ (if blank, then 3) days after Effective Date
29 •   Escrow Agent Information: Name: _____ WILLIAM M HOWELL, JR, PA
30 •   Address: __1727 S CO HWY 393__  __SANTA ROSA BEACH, FL 32459__  Phone: __850 622-0529__
31 •   E-mail: _____  Fax: _____
32 • (b) Additional deposit to be delivered to Escrow Agent within _____ (if blank, then 3)
33 •    days after Effective Date. ..................................... $_____
34      (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
35 • (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 . . $____90%
36 • (d) Other: _____  $_____
37 • (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
38 •    transfer or other COLLECTED funds ..................................... $____10%
39      NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
40   3.  TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:
41 • (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before __5 PM, CST__
42 •    __APRIL 1, 2011__, this offer shall be deemed withdrawn and the Deposit, if any, will be returned to Buyer.
43    Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
44    counter-offer is delivered.
45 • (b) The effective date of this Contract will be the date when the last one of the Buyer and Seller has signed or
46    initialed this offer or final counter-offer ("Effective Date").
47   4.  CLOSING DATE: Unless modified by other provisions of this Contract, the closing of this transaction shall occur
48    and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
49 • ("Closing") on __WITHIN 30 DAYS EFFECTIVE DATE__ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials __EAH__                     Page 1 of 10          Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.
                                                                              4/1/11  __JLW__  4/1/11

Form generated by TrueForms™   www.TrueForms.com   800-499-9612

50   5.  **EXTENSION OF CLOSING DATE:**
51        (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth In Lending Act (TILA)
52            notice requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements,
53            not to exceed 7 days.
54        (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes:
55            (i) disruption of utilities or other services essential for Closing, or (ii) Hazard, Wind, Flood or Homeowners'
56            insurance, to become unavailable prior to Closing, Closing will be extended a reasonable time up to 3 days
57            after restoration of utilities and other services essential to Closing, and availability of applicable Hazard, Wind,
58            Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not
59   *        occurred within _____ (if left blank, 14) days after Closing Date, then either party may terminate this
60            Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby
61            releasing Buyer and Seller from all further obligations under this Contract.

62   6.  **OCCUPANCY AND POSSESSION:** Unless otherwise stated herein, Seller shall, at Closing, have removed all
63       personal items and trash from the Property and shall deliver occupancy and possession, along with all keys,
64       garage door openers, access devices and codes, as applicable, to Buyer. If Property is intended to be rented or
65       occupied beyond Closing, the fact and terms thereof and the tenant(s) or occupants shall be disclosed pursuant
66       to STANDARD D. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to Property from
67       date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have
68       accepted Property in its existing condition as of time of taking occupancy.

69   * 7.  **ASSIGNABILITY: (CHECK ONE)** Buyer ☐ may assign and thereby be released from any further liability
70   *      under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign
71         this Contract.

72                                              **FINANCING**

73   8.  **FINANCING:**
74   *      ☐ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing
75                contingency to Buyer's obligation to close.
76   *      ☒ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☒ conventional ☐ FHA
77   *            ☐ VA loan on the following terms within _____ (if blank, then 30) days after Effective Date ("Loan
78   *            Commitment Date") for: (CHECK ONE): ☐ fixed, ☐ adjustable, ☒ fixed or adjustable rate loan in
79   *            the principal amount of $_____ or ___80___% of the Purchase Price, at an initial interest rate
80   *            not to exceed _____% (if blank, then prevailing rate based upon Buyer's creditworthiness), and for a
81   *            term of _____ years ("Financing").

82   *         Buyer will make mortgage loan application for the Financing within _____ (if blank, then 5) days after
83            Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing
84            ("Loan Commitment") and close this Contract. Buyer shall keep Seller and Broker fully informed about
85            the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and
86            Buyer's lender to disclose such status and progress to Seller and Broker.

87            If Buyer does not receive Loan Commitment, then Buyer may terminate this Contract by delivering written
88            notice to Seller, and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
89            further obligations under this Contract.

90            If Buyer does not deliver written notice to Seller of receipt of Loan Commitment or Buyer's written waiver of
91            this financing contingency, then after Loan Commitment Date Seller may terminate this Contract by
92            delivering written notice to Buyer and the Deposit shall be refunded to Buyer, thereby releasing Buyer and
93            Seller from all further obligations under this Contract.

94            If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not
95            thereafter close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default;
96            (2) Property related conditions of the Loan Commitment have not been met (except when such conditions
97            are waived by other provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is
98            insufficient to meet terms of the Loan Commitment; or (4) the loan is not funded due to financial failure of
99            Buyer's lender, in which event(s) the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller
100           from all further obligations under this Contract.
101  *      ☐ (c) Assumption of existing mortgage (see rider for terms).
102  *      ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).



**CLOSING COSTS, FEES AND CHARGES**

9.  **CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

(a) **COSTS TO BE PAID BY SELLER:**
- Documentary stamp taxes and surtax on deed, if any
- Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
- Title search charges (if Paragraph 9(c)(ii) is checked)
- HOA/Condominium Association estoppel fees
- Recording and other fees needed to cure title
- Seller's attorneys' fees
- Other: _____

If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a sum equal to 125% of estimated cost to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual costs. Any unused portion of escrowed amount shall be returned to Seller.

(b) **COSTS TO BE PAID BY BUYER:**
- Taxes and recording fees on notes and mortgages
- Recording fees for deed and financing statements
- Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
- Survey (and elevation certification, if required)
- Lender's title policy and endorsements
- HOA/Condominium Association application/transfer fees
- Loan expenses
- Appraisal fees
- Buyer's inspections
- Buyer's attorneys' fees
- All property related insurance
- Other: _____

(c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if blank, then 5) days prior to Closing Date, a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy premium and charges for owner's policy endorsements, title search, and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below (CHECK ONE):

☐ (i) Seller will designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select); or

☒ (ii) Buyer will designate Closing Agent and pay for Owner's Policy and Charges and charges for closing services related to Buyer's lender's policy, endorsements, and loan closing; or

☐ (iii) (MIAMI-DADE/BROWARD REGIONAL PROVISION): Seller will furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $ _____ (if blank, $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) **SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A will pay for a home warranty plan issued by _____ at a cost not to exceed $ _____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) **SPECIAL ASSESSMENTS:** At Closing, Seller will pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer will pay all other assessments. If special assessments may be paid in installments (CHECK ONE):

☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.

☒ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD) pursuant to Chapter 190 F.S. which lien shall be treated as an ad valorem tax and prorated pursuant to STANDARD K.

Buyer's Initials _____    Page 3 of 10    Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Form generated by: TrueForms™    www.TrueForms.com    800-499-9612

4/1/11

DISCLOSURES

10. DISCLOSURES.

(a) RADON GAS: Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) PERMITS DISCLOSURE: Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed.

(c) MOLD: Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) FLOOD ZONE; ELEVATION CERTIFICATION: Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal High Hazard Area" and finished floor elevation is below minimum flood elevation, Buyer may terminate this Contract by delivering written notice to Seller within 20 days after Effective Date, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property.

(e) ENERGY BROCHURE: Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

(f) LEAD-BASED PAINT: If Property includes pre-1978 residential housing, a lead-based paint rider is mandatory.

(g) HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.

(h) PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) TAX WITHHOLDING: If Seller is a "Foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"), Buyer and Seller will comply with FIRPTA, which may require Seller to provide additional cash at Closing.

(j) SELLER DISCLOSURE: Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as stated in the preceding sentence or otherwise disclosed in writing: (1) Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation; and (2) Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property.

PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS

11. PROPERTY MAINTENANCE: Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

12. PROPERTY INSPECTION; RIGHT TO CANCEL:

(a) PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have _____ (if blank, 15) days from Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be immediately returned to Buyer; thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.

Buyer's Initials _____                Page 4 of 10                Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Form generated by: TrueForms®   www.TrueForms.com   800-499-9612

04-01-2011 13:42    ABC  7034251131                                                            PAGE6

208
210    (b) WALK-THROUGH INSPECTION/RE-INSPECTION: On the day prior to Closing Date, or at a time agreed
       to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a
611    follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal
212    Property are on the Property and has maintained the Property as required by the AS IS
213    Maintenance Requirement and has met all other contractual obligations.

214    (c) SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS: If Buyer's
215    inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to
216    Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control
217    relating to improvements to the Property which are the subject of such open or needed Permits, and shall
218    promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to
219    resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary
220    authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates
221    of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or
222    become obligated to expend, any money.

223    (d) ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES: At Buyer's option and
224    cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
225    to Buyer.

226                                        ESCROW AGENT AND BROKER

227    13. ESCROW AGENT: Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
228    and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
229    within the State of Florida and, subject to COLLECTION, disburse them in accordance with terms and conditions
230    of this Contract. Failure of funds to become COLLECTED shall not excuse Buyer's performance. When conflicting
231    demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent
232    may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties
233    or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow
234    until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall
235    determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction
236    of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such
237    action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate,
238    except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate
239    broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve
240    escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.
241    Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
242    or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
243    attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent.
244    Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is
245    due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing
246    or termination of this Contract.

247    14. PROFESSIONAL ADVICE; BROKER LIABILITY: Broker advises Buyer and Seller to verify Property condition,
248    square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
249    professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
250    and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
251    Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
252    public records. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND
253    GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND
254    FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,
255    WRITTEN OR OTHERWISE) OF BROKER. Buyer and Seller (individually, the "Indemnifying Party") each
256    individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
257    employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees
258    at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection
259    with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
260    information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
261    failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
262    beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
263    recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv) products or services
264    provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such
265    vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors
266    and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not
267    relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14,

268   Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this

269   ~~Contract.~~

## DEFAULT AND DISPUTE RESOLUTION

271   **15. DEFAULT:**

272   (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
273   including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the
274   Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this
275   Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further
276   obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity
277   to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon
278   default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however,
279   Cooperating Brokers share shall not be greater than the commission amount Listing Broker had agreed to pay
280   to Cooperating Broker.

281   (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
282   reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
283   Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
284   from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
285   performance. This Paragraph 15 shall survive Closing or termination of this Contract.

286   **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
287   Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be
288   settled as follows:

289   (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
290   resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under
291   Paragraph 16(b).

292   (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
293   Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
294   The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
295   sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
296   may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16
297   shall survive Closing or termination of this Contract.

298   **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
299   by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
300   conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to
301   recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting
302   the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

304   **18. STANDARDS:**

305   **A. TITLE:**

306   (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
307   Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
308   be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or
309   before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the
310   amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
311   subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
312   prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat
313   or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry;
314   (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in
315   width as to rear or front lines and 7 1/2 feet in width as to side Lines); (e) taxes for year of Closing and subsequent
316   years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum);
317   provided, that none prevent use of the Property for RESIDENTIAL PURPOSES. If there exists at Closing any
318   violation of items identified in (b) - (f) above, then the same shall be deemed a title defect. Marketable title shall be
319   determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with
320   law.

321   (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify
322   Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it
323   is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after
324   date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period")
325   after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller,
326   Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will

04-01-2011 13:44  ABC 7034251131                                                                PAGE8

**STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)**

deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the remains to close the Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

B. SURVEY: If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others; or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

C. INGRESS AND EGRESS: Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

D. LEASES: Seller shall, within 5 days after Inspection Period, furnish to Buyer copies of all written leases and estoppel letters from each tenant specifying nature and duration of tenant's occupancy, rental rates, advanced rent and security deposits paid by tenant, and income and expense statements for preceding 12 months ("Lease Information"). If Seller is unable to obtain estoppel letters from tenant(s), the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit, and Buyer may thereafter contact tenant(s) to confirm such information. If terms of the lease(s) differ materially from Seller's representations, Buyer may deliver written notice to Seller within 5 days after receipt of Lease Information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all original leases to Buyer who shall assume Seller's obligation thereunder.

E. LIENS: Seller shall furnish to Buyer at Closing an affidavit attesting: (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller, and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

F. TIME: Calendar days shall be used in computing time periods. Any time periods provided for in this Contract which shall end on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day. Time is of the essence in this Contract.

G. FORCE MAJEURE: Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of Buyer or Seller, and which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force Majeure prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than 14 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

H. CONVEYANCE: Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:
(i) LOCATION: Closing will take place in the county where the Real Property is located at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title

Buyer's Initials _____                Page 7 of 10                Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Form generated by: True Forms™   www.TrueForms.com   800-499-9612

**STANDARDS FOR REAL ESTATE TRANSACTIONS**

387  insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic
388  means.
389  (ii) CLOSING DOCUMENTS: At Closing, Seller shall furnish and pay for, as applicable, deed, bill of sale,
390  certificate of title, construction lien affidavit, owner's possession affidavit, assignments of leases, and corrective
391  instruments. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract.
392  Buyer shall furnish and pay for, as applicable, mortgage, mortgage note, security agreement, financing statements,
393  survey, base elevation certification, and other documents required by Buyer's lender.
394  (iii) PROCEDURE: The deed shall be recorded upon COLLECTION of all closing funds. If the Title
395  Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the
396  escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, subject to
397  COLLECTION of all closing funds, disburse at Closing the brokerage fees to Broker and the net sale proceeds to
398  Seller.
399  J.   ESCROW CLOSING PROCEDURE: If Title Commitment issued pursuant to Paragraph 9(c) does not provide
400  for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow
401  and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period
402  of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer
403  shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt
404  of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds
405  paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with
406  such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to
407  Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the
408  Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be
409  available to Buyer by virtue of warranties contained in the deed or bill of sale.
410  K.   PRORATIONS; CREDITS: The following recurring items will be made current (if applicable) and prorated as of
411  the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
412  (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
413  and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in
414  which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by
415  prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to
416  Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current
417  year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing
418  occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be
419  prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then
420  taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of
421  year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated
422  based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which,
423  request shall be made to the County Property Appraiser for an informal assessment taking into account available
424  exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of
425  current year's tax bill. This STANDARD K shall survive Closing.
426  L.   ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH: Seller
427  shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
428  including a walk-through (or follow-up walk-through if necessary) prior to Closing.
429  M.   RISK OF LOSS: If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
430  ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
431  exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
432  pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
433  cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of
434  restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
435  Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
436  Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5% or receive a refund of the
437  Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
438  with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
439  N.   1031 EXCHANGE: If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneous with
440  Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
441  in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
442  cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
443  upon, nor extended or delayed by, such Exchange.
444  O.   CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; COPIES: Neither this Contract nor any
445  notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the
446  parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural

Florida Realtors/FloridaBar-ASIS-1 Rev. 8/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Form generated by: TrueForms™    www.TrueForms.com    800-499-9612

4/1/11

## STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

447  and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real
448  estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in
449  writing and may be made by mail, personal delivery or electronic (including "pdf") media. A legible facsimile or
450  electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an
451  original.
452  **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
453  of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
454  representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
455  in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
456  to be bound by it.
457  **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
458  Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
459  rights.
460  **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
461  or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
462  **S. COLLECTION or COLLECTED:** "COLLECTION" or "COLLECTED" means any checks tendered or received,
463  including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent
464  or Closing Agent. Closing and disbursement of funds and delivery of Closing documents may be delayed by
465  Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.
466  **T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and
467  conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower.
468  **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of
469  Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county in
470  which the Real Property is located.
471  *X. BUYER WAIVER OF CLAIMS: Buyer waives any claims against Seller and, to the extent permitted by*
472  *law, against any real estate licensee involved in the negotiation of this Contract, for any defects or other*
473  *damage that may exist at Closing of this Contract and be subsequently discovered by the Buyer or anyone*
474  *claiming by, through, under or against the Buyer.*

## ADDENDA AND ADDITIONAL TERMS

477  **19. ADDENDA:** The following additional terms are included in the attached addenda and incorporated into this
478  * Contract (Check if applicable):

| | | | |
|---|---|---|---|
| ☐ A. Condominium Assn. | ☐ L. RESERVED | ☐ R. Rezoning | ☐ Y. Seller's Attorney Approval |
| ☑ B. Homeowners' Assn. | | ☐ S. Lease Purchase/ Lease Option | ☐ Z. Buyer's Attorney Approval |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | ☐ T. Pre-Closing Occupancy | ☐ AA. Licensee-Personal Interest in Property |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control Line | ☐ U. Post-Closing Occupancy | ☐ BB. Binding Arbitration |
| ☐ E. FHA/VA Financing | ☐ O. Insulation Disclosure | ☐ V. Sale of Buyer's Property | ☐ Other _____ |
| ☐ F. Appraisal Contingency | ☐ P. Pre-1978 Housing Statement (Lead Based Paint) | ☐ W. Back-up Contract | |
| ☑ G. Short Sale | | ☐ X. Kick-out Clause | |
| ☐ H. Homeowners' Insurance | ☐ Q. Housing for Older Persons | | |
| ☐ I. FIRPTA | | | |
| ☐ J. Interest-Bearing Acct. | | | |
| ☐ K. RESERVED | | | |

479  * **20. ADDITIONAL TERMS:** *This contract is subject to seller completing attached Homeowner*
480  *Association disclosure and Buyer's approval of disclosure.*
481
482
483
484
485
486
487
488
489
490
491
492
493

Buyer's Initials _____          Page 9 of 10          Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-1 Rev. 9/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.
Form generated by: TrueForms™    www.TrueForms.com    800-499-9612

4/1/11

04-01-2011  13:46   ABC  7034251131                                              PAGE11

**COUNTER-OFFER/REJECTION**

494
495  • ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
496      deliver a copy of the acceptance to Seller).
497  • ☐ Seller rejects Buyer's offer.

498  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE**
499  **OF AN ATTORNEY PRIOR TO SIGNING.**

500  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

501  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
502  *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*
503  *should be negotiated based upon the respective interests, objectives and bargaining positions of all interested*
504  *persons.*

505  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
506  BE COMPLETED.

507  * Buyer: _____    Date: 3/24/11
                    EDWARD A HARRIS, III

508  * Buyer: _____    Date: _____

509  * Seller: _____    Date: 4/1/11
                    EDWARD G NEWMAN

510  * Seller: _____    Date: 4/1/11
                    FRANCES C NEWMAN

511  Buyer's address for purposes of notice         Seller's address for purposes of notice
512  * 449 SUNSET DR                                 8515 HAMPTON WAY
513  * BIRMINGHAM, AL 35216                          FX STATION, VA 22039
514  * _____                _____

515  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
516  to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent
517  to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
518  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
519  retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
520  made by Seller or Listing Broker to Cooperating Brokers.

521  * RICHARD E STAFFORD                            Richard Veldman
522  Cooperating Sales Associate, if any             Listing Sales Associate

523  * TOMMY SHOLES, INC., APPRAISERS/REALTORS       RIVARD REALTY OF SOUTH WALTON
524  Cooperating Broker, if any                      Listing Broker

FloridaRealtors/FloridaBar-ASIS-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612

04-01-2011  19:26    ABC  7034251131                                                          PAGE2

## Residential Sale and Purchase Contract: Comprehensive Addendum
FLORIDA ASSOCIATION OF REALTORS®

1  The clause below will be incorporated into the Contract between _____EDWARD G & FRANCES C NEWMAN_____ (Seller)
2  and _____GULF TRACE, LLC, c/o EDWARD A HARRIS, III_____ (Buyer) concerning the Property described as
3  _____148 GULF SHORE DRIVE, SANTA ROSA BEACH, FL 32459_____, only if initialed by all parties:

4  (__) (___) · (__) (FCN) **G. Homeowners' Association:** The Property is located in a community with a ☐ voluntary
5  ☐ mandatory (see the disclosure summary below) homeowners' association ("Association"). Seller's warranty under Paragraph 5 of
6  the Contract and risk of loss under Paragraph G or Paragraph H of the Comprehensive Addendum (if applicable) extend only to the
7  Property and does not extend to common areas or facilities described below.
8  **Notice:** Association documents may be obtained from the county record office or, if not public record, from the developer or Association
9  manager. The Property may be subject to recorded restrictive covenants governing the use and occupancy of properties in the
10 community and may be subject to special assessments.
11 **(1) Association Approval:** If the Association documents give the Association the right to approve Buyer as a purchaser, this
12 Contract is contingent on such approval by the Association. Buyer will apply for approval within _____ days from Effective
13 Date (5 days if left blank) and use diligent effort to obtain approval, including making personal appearances and paying
14 related fees if required. Buyer and Seller will sign and deliver any documents required by the Association to complete the
15 transfer. If Buyer is not approved, this Contract will terminate and Seller will return Buyer's deposit unless this Contract
16 provides otherwise.
17 **(2) Right of First Refusal:** If the Association has a right of first refusal to buy the Property, this Contract is contingent on the
18 Association deciding not to exercise such right. Seller will, within 3 days from receipt of the Association's decision, give Buyer written
19 notice of the decision. If the Association exercises its right of first refusal, this Contract will terminate, Buyer's deposit will be refunded
20 unless this Contract provides otherwise and Seller will pay Broker's full commission at closing in recognition that Broker procured the
21 sale.
22 **(3) Fees:** Buyer will pay any application, transfer and initial membership fees charged by the Association. Seller will pay all fines
23 imposed against the Property as of Closing Date and any fees the Association charges to provide information about its fees or the
24 Property, and will bring maintenance and similar periodic fees and rents on any recreational areas current as of Closing Date. If, after
25 the Effective Date, the Association imposes a special or other assessment for improvements, work or services, Seller will pay all
26 amounts due before Closing Date and Buyer will pay all amounts due after Closing Date. If special assessments may be paid in
27 installments ☐ Buyer ☐ Seller (if left blank, Buyer) shall pay installments due after Closing Date. If Seller is checked, Seller will pay
28 the assessment in full prior to or at the time of Closing. Seller represents that he/she is not aware of any pending special or other
29 assessment that the Association is considering except as follows:
30 $_____ per _____ to _____
31 The following dues/maintenance fees are currently charged by the homeowners' association:
32 $ 400 per YEAR to _____
33 $_____ per _____ to _____
34 $_____ per _____ to _____

35 **(4) Damage to Common Elements:** If any portion of the common element is damaged due to fire, hurricane or other casualty before
36 closing, either party may cancel the Contract and Buyer's deposit shall be refunded if (a) as a result of damage to the common
37 elements, the Property appraises below the purchase price and either the parties cannot agree on a new purchase price or Buyer
38 elects not to proceed, or (b) the Association cannot determine the assessment attributable to the Property for the damage at least 5
39 days prior to Closing Date, or (c) the assessment determined or imposed by the Association attributable to the Property for the
40 damage to the common element is greater than $_____ or _____% of the purchase price (1.5% if left blank).
41 **(5) Disclosure Summary for Mandatory Associations:** IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401,
42 FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS
43 CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR
44 REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE
45 DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS
46 VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.

47 Disclosure Summary For (Name of Community) _____
48 (1) AS A PURCHASER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A
49 HOMEOWNERS' ASSOCIATION.
50 (2) THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS GOVERNING THE USE AND OCCUPANCY OF
51 PROPERTIES IN THIS COMMUNITY.
52 (3) YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO
53 PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.
54 YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH
                                                                                              (See Continuation)

55
56 Buyer (___) (___) and Seller (__) (FCN) acknowledge receipt of a copy of this page.
57 FARA-10b  1/09 ©2009  Florida Association of REALTORS®  4/1/11 All Rights Reserved        Page _____ of Addendum No. _____

Form generated by: TrueForms™   www.TrueForms.com   800-498-9612

4/4/11                4/1/11

58    B. Homeowners' Association: (CONTINUATION)

59    SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____
60    PER _____.
61    (4) YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR
62    SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
63    (5) YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS'
64    ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.
65    (6) THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY
66    USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE
67    CURRENT AMOUNT IS $_____ PER _____.
68    (7) IF THE ASSOCIATION IS STILL UNDER THE CONTROL OF THE DEVELOPER, THE DEVELOPER MAY HAVE THE RIGHT
69    TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP
70    OR THE APPROVAL OF THE PARCEL OWNERS.
71    (8) THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A
72    PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING
73    DOCUMENTS BEFORE PURCHASING PROPERTY.
74    (9) THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD
75    OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR, IF NOT RECORDED, CAN BE OBTAINED FROM THE
76    DEVELOPER.

77    Buyer acknowledges receipt of this summary before signing this Contract.

78
79    Buyer    EDWARD A HARRIS, III        Date  4/4/11          Buyer                                Date

80    Buyer (____)(____) and Seller (____) acknowledge receipt of a copy of this page.
81    FARA-10b  1/99 ©2006  Florida Association of REALTORS®        All Rights Reserved        Page ____ of Addendum No. ____

Form generated by TrueForms™    www.TrueForms.com    800-499-9612

**Short Sale Addendum to Purchase and Sale Contract**    🏠 **FloridaRealtors**

The following provisions are made a part of the Contract for Sale and Purchase or Residential Sale and Purchase Contract between

_____ EDWARD G & FRANCES C NEWMAN _____ ( Seller) and

_____ GULF TRACE, LLC, c/o EDWARD A HARRIS, III _____ (Buyer) concerning the Property located

at ____ 148 GULF SHORE DRIVE SANTA ROSA BEACH, FL 32459 _____

1. **Approval of the Lender:** This Contract is contingent upon: (a) the Seller's lender(s) and/or other lien holder(s) (collectively the "Lender") approval of the purchase price, terms of the Contract and the HUD-1 settlement statement (b) the Lender's agreement to accept a payoff which is less than the balance due on the loan or other indebtedness and (c) the Lender's release and satisfaction of the mortgage(s) and/or other lien(s) upon receipt of discounted payoff. Seller agrees to disclose or provide any requested information or documentation to the Lender for the purpose of obtaining approval of this short sale Contract. If Seller obtains an approval from Lender, Seller shall deliver written notice of the approval to the Buyer no later than 3 days after receipt of the approval. If Seller does not deliver written notice to Buyer that Lender has approved the purchase price and contract terms within _____ days from Effective Date ("Approval Deadline") (30 days if left blank), or if Lender rejects this Contract prior to the expiration of the Approval Deadline, either party may thereafter cancel the Contract by delivering written notice to the other. However, such right to cancel shall cease to exist if Seller delivered written notice that the Contract has been approved by the Lender.

2. **Effective Date and Time for Acceptance:** The Effective Date and the time for acceptance of all offers and counteroffers under the Contract shall be computed as set forth in the Contract.

3. **Time periods:** (check one)

   ☒ Except for Approval Deadline, all time periods for inspections, contingencies, deposit(s) and other obligations under the Contract shall commence from the date Seller delivers written notice to Buyer that the Contract has been approved by the Lender.

   ☐ All time periods under the Contract shall commence from the Effective Date under the Contract.

4. **Acknowledgement by Buyer:** Buyer acknowledges that the Lender is not a party to the Contract and therefore is not obligated to approve the Contract. Buyer further acknowledges that Seller and Broker are not liable for delays caused by Lender, failure of the Lender to approve the Contract, failure of the Lender to complete the short sale after approving the Contract or any costs and expenses (such as payments for loan applications, inspections, and appraisals) associated with the delays or Lender's failure to approve the Contract or complete the Short Sale after approving the Contract.

5. **Seller Acknowledgment:** Seller acknowledges that a short sale may result in Lender requiring the Seller to pay the difference of what was owed as a deficiency judgment, that the Lender's forgiveness of debt may be a taxable event to the Seller and that Seller's credit may be negatively impacted. Seller also acknowledges that Lender may require Seller to bring funds to Closing or to execute a promissory note. Seller is advised to consult with appropriate financial, legal and tax professionals. Seller agrees to rely on such professionals and not Broker for tax and legal advice. Seller agrees to release Broker and its associates from all liability regarding the consequences of a short sale.

6. **Multiple Offers:** (check one) ☒ During the term of this Contract, Seller may not accept any back-up offers or enter into any back-up contracts unless otherwise instructed, directed or required by Lender. ☒ During the term of this Contract, Seller may accept a back-up offer or enter into a back-up contract that is conditioned upon termination of this Contract.

This addendum amends the above-referenced Contract between Seller and Buyer. All other non-conflicting provisions of that agreement remain in full force and effect.

| | | |
|---|---|---|
| SELLER  EDWARD G NEWMAN | DATE  4/1/11 | SELLER  FRANCES C NEWMAN    DATE  4/1/11 |
| BUYER  EDWARD A HARRIS, III | DATE  3/24/11 | BUYER    DATE |

SSA-3 Rev. 11/2011   © 2010 Florida Association of REALTORS® All Rights Reserved

Form generated by: TrueForms™    www.TrueForms.com    800-499-9612



800 Shades Creek Parkway (35209)
PO Box 11746
Birmingham, AL 35202
Phone 205-879-2800
www.firstcommercialbank.com

April 5, 2011

Gulf Trace, LLC
Attn: Mr. Tripp Harris
Harris Coggin Building Company, Inc.
2028 Kentucky Avenue, Suite 203
Vestavia Hills, AL 35216

Dear Mr. Harris:

In response to your request for a pre-approval letter, please be advised that based on the information submitted and subject to the items listed below, Gulf Trace, LLC is pre-approved for financing in the amount of $765,000 for the purchase of the beach house located at 148 Gulf Shores Drive, Santa Rosa Beach, Florida. This loan will be an 85% loan amount based on a purchase price of $900,000.

1.  Subject to acceptable appraisal of property.

2.  Subject to final financial underwriting.

3.  Subject to acceptable closing documents, i.e. clear title, insurance, etc.

Should you have any questions please do not hesitate to call me at (205) 868-4941.

Sincerely,

Alice B. Womack
Vice President
Private Client Group

LENDER

a division of SYNOVUS BANK
MEMBER FDI

# Addendum to Contract
**FLORIDA ASSOCIATION OF REALTORS®**

Addendum No. _____A_____ to the Contract between _____ EDWARD G & FRANCES C NEWMAN _____ ("Seller")

and _____ EDWARD A HARRIS, III, ET AL _____ ("Buyer") concerning the Property described as:

_____ 146 GULF SHORE DRIVE _____ SANTA ROSA BEACH , FL 32459

(the "Contract"). **Buyer** and **Seller** make the following terms and conditions part of the Contract.

It is mutually agreed between Buyer and Seller contract price is $ 940, 400.00. Buyer will pay all closing costs associated with sale, except Realtor fee and pro-rated taxes. Seller net proceeds is  at least $ 880,876.00, all as per attached HUD-1 Settlement Statement to be acknowledge and made a part of this addendum. Buyer is Edward A. Harris, III, ET AL.

Date: _____    Buyer: _____
                                                        EDWARD A HARRIS, III

Date: _____    Buyer: _____

Date: _6/3/11____    Seller: _____
                                                        EDWARD G NEWMAN

Date: _6/3/11____    Seller: X _____
                                                        FRANCES C NEWMAN

This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS and who subscribe to its Code of Ethics.

The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

ACSP-2a   Rev. 6/94   ©1994 Florida Association of REALTORS   All Rights Reserved